# EXHIBIT A

Filing # 80362980 E-Filed 11/05/2018 07:16:19 PM

IN THE CIRCUIT COURT
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA ZAMPA, individually, and as guardian of her minor children J.M., a minor, and J.M., a minor, on behalf of themselves and those similarly situated,

Plaintiff,

v.

JUUL LABS, INC., a Delaware corporation f/k/a PAX LABS, INC. f/k/a PLOOM PRODUCTS, INC., and PAX LABS, INC., a Delaware corporation f/k/a/ PAX LABS (DEUX), INC.,

Defendants.

Case No.: 18-37507CA01
Division:

CLASS ACTION COMPLAINT
CLASS REPRESENTATION

DEMAND FOR JURY TRIAL

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SABRINA ZAMPA, individually, and as legal guardian for her minor children J.M.–1 and J.M.–2 ("Plaintiffs"), by and through their undersigned counsel, bring this class action complaint against Defendants, JUUL LABS, INC., a Delaware corporation formerly known as PAX LABS, INC., formerly known as PLOOM PRODUCTS, INC. (hereinafter "JUUL"), and PAX LABS, INC., a Delaware corporation formerly known as PAX LABS (DEUX), INC. (hereinafter "PAX") (and collectively, "Defendants"), on behalf of themselves and those similarly situated, and allege:

**INTRODUCTION**

1. This is a class action complaint by Florida residents against Defendants for false advertising, violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), fraud, unjust enrichment, failure to warn, negligence, and negligence *per se*. The following

allegations are based upon personal knowledge with respect to themselves and on information and belief derived therefrom, among other things, investigation of counsel and review of public documents as to all other matters.

## JURISDICTION AND VENUE

2. This is an action for damages in excess of this Court's minimum jurisdictional limits of Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

3. At all times material to this Complaint, Plaintiffs were and are residents of Miami, Miami-Dade County, Florida.

4. At all times material to this Complaint, JUUL was and is a foreign corporation authorized to conduct business in the State of Florida, and engaged in continuous and substantial business in the State of Florida, including Miami-Dade County.

5. At all times material to this Complaint, PAX was and is a foreign corporation authorized to conduct business in the State of Florida, and engaged in continuous and substantial business in the State of Florida, including Miami-Dade County.

6. Jurisdiction and venue are proper in Miami-Dade County, Florida, because both JUUL and PAX sold the products that caused injury to Plaintiffs in Miami-Dade County, Florida.

## PARTIES

### A. Plaintiffs

7. J.M.–1, and his mother and natural guardian, Sabrina Zampa ("Zampa"), are and at all times relevant were, individuals and residents of Miami, Miami-Dade County, Florida. Presently 16 years-old, J.M.–1 began using JUUL vaping products, or "JUULing," in middle school. J.M.–1 made his first purchase of JUUL products from the online JUUL store, and was able to even though he was underage. When he first tried a JUUL product, J.M.–1 was not aware

that JUUL contained nicotine, how much nicotine a JUUL contained, or that the JUUL had specifically been developed to maximize the narcotic and, hence, addictive effects of nicotine. Nor was J.M.–1 aware of the other additives in JUUL products and the health consequences of those additives. At the age of 16, J.M.–1 has spent at least hundreds of dollars on JUULpods. J.M.–1 began purchasing the JUULpod replacements through PostMates because J.M.–1 could receive the replacements without producing identification and proof of age.

8. J.M.–2, and his mother and natural guardian, Zamba, are and at all times relevant were, individuals and residents of Miami, Miami-Dade County, Florida. Presently 14 years-old, J.M.–2 began "JUULing" in middle school. When he first tried a JUUL, J.M.–2 was not aware that JUUL contained nicotine, how much nicotine a JUUL contained, or that the JUUL had specifically been developed to maximize the narcotic and, hence, addictive effects of nicotine. Nor was J.M.–2 aware of the other additives in JUUL products and the health consequences of those additives. At the age of 14, J.M.–2 has spent at least hundreds of dollars on JUULpods. J.M.–2 began purchasing the JUULpod replacements through Post Mates because J.M.–2 could receive the replacements without producing identification and proof of age.

9. J.M.–1 and J.M.–2 have both attempted to reduce or quit their use of JUUL products, without success. When they do attempt reduction or cessation, they suffer headaches and other ill effects, causing them to continue the use of JUUL products. These conditions and the addictive nature of JUUL products have impaired their ability to reduce and cease the use of nicotine delivery products, and to date they have been unable to cease use thereof.

10. J.M.–1 and J.M.–2 were both intrigued with JUUL's products because of the branding and more particularly the flavors—specifically, JUUL's "limited edition cool cucumber." They both have used JUUL products because of the attractive flavors JUUL uses to

market and sell their JUUL products.

11. Zampa first discovered her sons' JUUL in August 2017. When Zampa discovered her sons' JUUL devices, she initially thought they were USB drives for her sons' computer due to the design and layout of the JUUL device. When she inquired with her sons about the JUUL device, Zampa realized what she thought was a USB drive was actually a JUUL device, and her sons had been consuming harmful amounts of nicotine since middle school, and were using Post Mates and other methods to obtain JUULpods without presenting identification and proof of age.

12. Because her sons constantly used JUUL products for years at such young ages, Zampa is concerned about future health complications associated with the prolonged consumption of nicotine and other additives in JUUL products by minors, including her sons. Zampa, with her minor sons, claims the cost of diagnostic testing for the early detection of illness, disease, and disease process, the cost of nicotine use cessation programs, and other remedies on behalf of her minor children and the class.

**B. Defendants**

13. JUUL Labs, Inc., is a Delaware corporation with its principal address at 560 20th Street, San Francisco, CA 94107. JUUL was originally authorized to do business in Florida on August 16, 2013, under the name Ploom Products, Inc., and changed its name from Ploom Products, Inc., to PAX Labs, Inc., on February 11, 2015, and changed its name from PAX Labs, Inc., to JUUL Labs, Inc., on June 30, 2017. Any and all allegations toward JUUL are inclusive of JUUL in its prior form as either Ploom Products, Inc. (from August 16, 2013, through February 11, 2015), or PAX Labs, Inc. (from February 11, 2015, through June 30, 2017).

14. PAX Labs, Inc., is a Delaware corporation with its principal address at 660 Alabama Street, San Francisco, CA 94110. PAX originally applied to do business in Florida on

November 13, 2017, and filed a Foreign Profit Corporation Annual Report with the Florida Secretary of State on May 18, 2018.

15. At all relevant times alleged herein, each Defendant was an agent, servant, representative, officer, director, partner, or employee of the other Defendant and, in performing the conduct complained of herein, was acting within the scope and course of its authority as such an agent, servant, representative, officer, director, partner, or employee, and with the permission and consent of each other Defendant.

16. At all relevant times alleged herein, each Defendant was a member of, and engaged in, a joint venture, partnership, and common enterprise, and acted within the course and scope of, and in pursuit of, said joint venture, partnership, and common enterprise.

17. At all relevant times alleged herein, each Defendant ratified each and every act or omission complained of herein.

18. At all relevant times alleged herein, the acts and omissions of each Defendant concurred and contributed to the various acts and omissions of the other Defendants in proximately causing the injuries and damages alleged herein.

## GENERAL ALLEGATIONS

19. Defendants falsely and deceptively advertise JUUL e-cigarettes and JUULpods to Florida residents in unfair, unlawful, and fraudulent ways, especially marketing those products as safe, candy-like products to which minors are attracted, when they in fact contain more potent doses of nicotine than cigarettes, which makes them particularly addictive. Defendants failed to disclose myriad health problems that are likely to occur from the use of Defendants' products, including: increased risk of heart disease and stroke; changes in brain functionality that lead to changes in behavior, respiratory illness, increased susceptibility to anxiety, depression and other

addictions; long-term nicotine addiction; decreased functionality of the immune and endocrine systems; heightened risk of cancer; and negative effects on fertility.[1] Defendants aimed their marketing efforts toward children and minors especially, utilizing sophisticated marketing campaigns and mechanisms, and designed their JUUL products to be deliverable through third-party vendors such as Post Mates and other companies that do not require proof of identification upon delivery through the postal service and other methods.

20. Released in 2015,[2] JUUL is now a leading e-cigarette manufacturer and seller in the e-cigarette market in the United States. JUUL e-cigarettes' patented nicotine formulation is more addictive than its competitors, including the most potent and popular cigarettes on the market. Instead of disclosing addictive nature and nicotine formulation to consumers, JUUL launched a multi-million dollar marketing campaign targeting children and minors in an effort to brand the JUUL e-cigarette as a fashion accessory sold in "limited edition" colors and candy-like flavors.[3]

21. As one of the engineers who invented the JUUL e-cigarette stated: "We don't think a lot about addiction here because we're not trying to design a cessation product at all . . . anything about health is not on our mind."[1] Defendants' website (http://www.juulvapor.com) touts the JUUL e-cigarette as "the i-Phone of E-cigs," thereby framing them as a cool, fashionable item to own and use, especially for children and minors.

---

1 *See* Mishra, A., et al., *Harmful Effects of Nicotine*, Indian J. Med. Paediatr. Oncol., 36(1):24–31 (Jan.-Mar. 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4363846

2 Nitasha Tiku, *Startup behind the Lambo of Vaporizers just Launched an Intelligent e-Cigarette*, The Verge (April 21, 2015), available at https://www.theverge.com/2015/4/21/8458629/pax-labs-e-cigarette-juul

3 Susan Weisman, JD, *JUUL Electronic Cigarette's Popularity with Youth & Young Adults*, Public Health Law Center (April 26, 2018), available at http://www.publichealthlawcenter.org/sites/default/files/JUUL-Webinar-Slides-Apr262018.pdf

22. Defendants advertise and market the JUUL and JUULpods in a variety of bright colors, with the nicotine pods advertised and marketed in child- and minor-focused flavors such as "cool mint," "crème brulee," "mango," "fruit medley," and "limited edition cool cucumber." Defendants' JUUL e-cigarettes are more effective at delivering nicotine into the bloodstream than cigarettes, and their pre-filled cartridges of nicotine solution, called "JUULpods," contain three times more nicotine than the legal limit in the European Union. As a result, Defendants' products deliver more highly addictive nicotine into the bloodstream at a faster rate than cigarettes.

23. Defendants have aggressively engaged in child- and minor-based marketing to target users who like the taste of candy, as evidenced by their use of child- and minor-friendly flavors. Defendant paired these addictive aspects with an advertising campaign concentrating on bright, attractive images of young people, thereby framing JUUL as product for hip, young users. JUUL's efforts have resulted in meteoric growth—more than a 700% increase in 2017 alone. Defendants' marketing campaigns (e.g., attractive flavors and young actors) has resulted in rising concern among parents, physicians, and school administrators who have seen a dramatic increase in use among children and minors alike.

24. In 2011, less than 2% of U.S. high school students reported using e-cigarettes in the previous month, but by 2015 that percentage had increased to 16%. The number of high-school students who used e-cigarettes in the 30 days before September 2018 had risen roughly 75% since 2017.[4] According to a Wall Street Journal Survey, the most common reasons for vaping were for the flavors, and because minors think it is "cool." *Id.* The evidence is clear

---

4 McKay and Maloney, *Youth Vaping has Soared in 2018, New Data Shows*, The Wall Street Journal (Sep. 21, 2018), *available at* https://www.wsj.com/articles/youth-vaping-has-soared-in-2018-new-data-show-1537481424?mod=searchresults&page=1&pos=2.

that flavors play a key role in youth use of tobacco products, including e-cigarettes.[5]

25. JUULpods continue to be marketed in child- and minor-friendly flavors, and in the same addictive and unhealthy form, and without proper warnings and labelling and without reasonable controls to limit their availability to minors. In fact, Defendants' products are available to minors through Defendants' website which has sham restrictions on the age of use of the site and age of purchase.

26. Defendants have thus employed an unfair and deceptive marketing approach. Children and minors alike are targeted through sophisticated advertising campaigns, including social media, with the child- and minor-friendly flavors and remnants of Defendants' prior youth-focused multimillion dollar advertisement campaigns. Adolescent exposure to nicotine is associated with an increased risk of mood and attention problems.[6]

27. According to the American Lung Association and its partners Juul is putting kids at risk of nicotine addiction and threatens to undermine decades of progress in reducing youth tobacco use.[7]

28. Defendants knew, and should have known, that the developing brain of children is more susceptible to the harmful effects of nicotine, including addiction.[8]

29. Under Florida law, a "nicotine dispensing device" means:

> any product that employs an electronic, chemical, or mechanical means to produce vapor from a nicotine product, including, but not

---

[5] Dr. Scott Gottlieb, *Need for Immediate FDA Action to Protect Young People from JUUL Electronic Cigarettes* (April 18, 2018), *available at* https://www.lung.org/assets/documents/advocacy-archive/partners-letter-to-fda-re-juul.pdf (last accessed October 31, 2018).

[6] *Public Health Consequences of E-Cigarettes*. National Academies of Sciences Engineering Medicine (Jan. 23, 2018) *available at* http://nationalacademies.org/hmd/Reports/2018/public-health-consequences-of-e-cigarettes.aspx.

[7] Gottlieb, *supra* n.5.

[8] *E-Cigarettes and Lung Health*, American Lung Association, *available at* https://www.lung.org/stop-smoking/smoking-facts/e-cigarettes-and-lung-health.html (last accessed Oct. 31, 2018).

> limited to, an electronic cigarette, electronic cigar, electronic cigarillo, electronic pipe, or other similar device or product, any replacement cartridge for such device, and any other container of nicotine in a solution or other form intended to be used with or within an electronic cigarette, electronic cigar, electronic cigarillo, electronic pipe, or other similar device or product.

Fla. Stat. § 877.112(1)(a) (2018). The JUUL products that minor plaintiffs and other resident minors of Florida use are nicotine dispensing devices under Florida law.

30. Under Florida law, a "nicotine product" is defined as "any product that contains nicotine, including liquid nicotine that is intended for human consumption, whether inhaled, chewed, absorbed, dissolved, or ingested by any means." Fla. Stat. § 877.112(1)(b) (2018). The JUUL products that minor plaintiffs and other resident minors of Florida use are nicotine products under Florida law.

31. Under Florida law, it is "unlawful to sell, deliver, barter, furnish, or give, directly or indirectly, to any person who is under 18 years of age, any nicotine product or a nicotine dispensing device." Fla. Stat. § 877.112(2). Defendants have sold, delivered, bartered, furnished, or given, directly or indirectly, nicotine products and nicotine dispensing devices to Florida residents under 18 years of age.

## CLASS REPRESENTATION ALLEGATIONS

32. Plaintiffs bring this action against Defendants on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure. The proposed class is defined as follows:

> All residents of Florida who, at the time of their use of JUUL products, were under the age of 18, and who procured and used JUUL products (the "Class").

33. Plaintiff Zampa brings this action against Defendants on behalf of herself and all others similarly situated, as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure. The proposed class is defined as follows:

> All legal guardians of all residents of Florida who, at the time of their use of JUUL products, were under the age of 18, and who procured and used JUUL products (the "Guardian Class").

34. Plaintiffs reserve the right to propose subclasses or narrow of the above class definitions, based on the evidence adduced in discovery, or as necessary and appropriate.

35. This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of Rule 1.220 of the Florida Rules of Civil Procedures because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

36. **Numerosity**: Plaintiffs are not aware of the exact size of the Class, but the class is imposed of more than 500 persons. The people in the Class are so numerous that the joinder of each member is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

37. **Commonality and Predominance**: This action involves common questions of law and fact to the Class because each Class Member's claim derives from the false, deceptive, unlawful, and/or unfair statements and omissions that led Class Members to believe that: (a) JUUL E-cigarettes and JUULpods were less addictive than traditional cigarettes; (b) JUUL products could be used without negative health consequences, and (c) they would be able to stop using and purchasing JUUL products "anytime." Class Member claims also derive from common questions of law and fact related to JUUL products falsely advertised as non-addictive. The common questions of law and fact predominate over individual questions, as proof of a common

or single set of facts will establish the right of each Class Member to recover. Among the questions of law and fact common to the class are:

a. Whether Defendants' advertising and marketing regarding the JUUL e-cigarette and JUULpods were likely to deceive Class Members;

b. Whether Defendants' advertising and marketing regarding the JUUL e-cigarette and JUULpods were unfair to Class Members;

c. Whether Defendants intentionally omitted material information from their advertising and marketing materials;

d. Whether Defendants unfairly, unlawfully, and/or deceptively induced Class Members to purchase JUUL e-cigarettes and/or JUULpods using the promise that they would be able to stop purchasing JUULpods "anytime";

e. Whether Defendants unfairly, unlawfully, and/or deceptively induced Class Members to purchase JUUL e-cigarettes and/or JUULpods by representing they were less addictive than traditional cigarettes;

f. Whether Defendants unfairly, unlawfully, and/or deceptively induced Class Members to purchase JUUL e-cigarettes and/or JUULpods by falsely representing that Class Members would not suffer negative health consequences;

g. Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

h. The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

i. Whether Class Members are entitled to injunctive and other equitable relief and, if

so, what is the nature of such relief; and

j. Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest thereon, and if so, the nature of such relief.

38. **Typicality**: Plaintiffs' claims are typical of the Class Members', claims because, among other things, Plaintiffs and the Class Members were injured through Defendants' substantially uniform misconduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and the Class Members, and there are no defenses that are unique to Plaintiffs' claims. Plaintiffs' and the Class Members' claims arise from the same operative facts and are based on the same legal theories.

39. **Adequacy**: Plaintiffs are adequate representatives of the Nationwide Class because their interests do not conflict with the interests of the other class members they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

40. **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for the Class Members to individually seek redress for Defendants' wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation would create a

potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

41. **Injunctive and Declaratory Relief**: Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 1.220(b)(2) of the Florida Rules of Civil Procedure.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(False Advertising)**
**(On Behalf of the Class and Guardian Class)**

42. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully stated herein.

43. Since the release of JUUL in 2015, Defendants have made untrue, false, deceptive, and/or misleading statements directed toward minors in connection with the advertising and marketing of JUUL e-cigarettes and JUULpods in Florida.

44. Defendants have made false representations and statements that led reasonable minor consumers susceptible to Defendants' advertising campaigns to believe that JUUL e-cigarettes and JUULpods contain no nicotine, deliver less nicotine than cigarettes, or are no more addictive than cigarettes. Defendants additionally withheld material information from minor consumers regarding the addictiveness and other negative health consequences of JUUL e-cigarettes and JUULpods.

45. Defendants knowingly engaged in these false, misleading, and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as prohibited by Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute Section 501.201, *et seq*.

46. Plaintiffs and Class Members, being unsophisticated minors susceptible to Defendants' advertising campaigns, relied to their detriment on Defendants' false, misleading, and deceptive advertising and marketing practices. Had Plaintiffs and Class Members been adequately informed and not intentionally deceived by Defendants, they would not have purchased a JUUL e-cigarette and JUULpods.

47. Plaintiffs and Class Members are entitled to full restitution of monies to restore all amounts paid to and acquired by Defendants from Plaintiffs and Class Members by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.

48. Plaintiffs seek, on behalf of themselves and Class Members, an injunction to prohibit Defendants from continuing to engage in the false, misleading, and deceptive advertising and marketing practices complained of herein in Florida.

49. Further Plaintiffs and Class Members seek: (1) a declaration that the above-described practices constitute false, misleading, and deceptive advertising; and (2) injunctive relief restraining Defendants from engaging in any such advertising and marketing practices in the future in Florida. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public of Florida and the loss of money and property in that the Defendants will continue to violate the laws of Florida, unless specifically ordered to comply with the same. This expectation of future violations will

require current and future minor consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs and Class Members have no other adequate remedy at law to ensure future compliance with the FDUTPA alleged to have been violated herein.

50. As a direct and proximate result of such actions, Plaintiffs and Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading advertising.

51. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure have suffered increased risk of illness, disease or disease process, requiring an award of the cost of a program for monitoring for detection of such illness, disease process or disease. Early detection of illness, disease or disease process will benefit Plaintiffs and Class Members.

52. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure to an addictive substance have suffered the need for tobacco education and cessation counseling, requiring an award of the cost of a program for education and cessation.

53. In addition, Plaintiff Zampa and the Guardian Class members seek the cost of diagnostic testing for the early detection of illness, disease, and disease process, the cost of nicotine use cessation programs, and other remedies.

**SECOND CAUSE OF ACTION**
**(Fraud)**
**(On Behalf of the Class)**

54. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully stated herein.

55. Defendants fraudulently and deceptively sold JUUL products to Plaintiffs and Class Members as not containing nicotine, non-addictive nicotine delivery systems, or less addictive nicotine products than cigarettes, when Defendants knew it to be untrue.

56. Further, Defendants fraudulently and deceptively failed to disclose to Plaintiffs and Class Members the highly-addictive nature of JUUL's use of nicotine salts, which made it more difficult to cease purchasing JUULpod refills.

57. Further, Defendants fraudulently and deceptively convinced Plaintiffs and Class Members they could cease purchasing JUULpods "anytime," when Defendants knew it to be untrue.

58. Further, Defendants fraudulently and deceptively failed to disclose to Plaintiffs and Class Members that the nicotine salts in JUULpods delivered nicotine at a much higher rate than cigarettes, which was likely to make the nicotine addiction associated with JUUL products stronger and more severe than that associated with cigarettes or even other E-cigarette products.

59. Each of these misrepresentations and omissions were material when made. In particular, each instance of fraud, deceit, misrepresentation, and/or omission concerned material facts that were essential to Plaintiffs' and Class Members' decisions whether to purchase a JUUL e-cigarette and JUULpod.

60. Plaintiffs and Class Members detrimentally relied on Defendants' fraud, deceit, misrepresentations, and/or omissions. Had Plaintiffs and Class Members been adequately

informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (1) not purchasing a JUUL E-cigarette or JUULpod; and (2) not subscribing to Defendants' "autoship" service.

61. By and through such fraud, deceit, misrepresentations, and/or omissions, Defendants intended to induce Plaintiffs and Class Members to detrimentally rely on the fraud, deceit, misrepresentations, and/or omissions.

62. Plaintiffs and Class Members justifiably and reasonably relied on Defendants' fraud, deceit, misrepresentations, and/or omissions, and, accordingly, were damaged by the Defendants' actions.

63. As a direct and proximate result of Defendants' fraud, deceit, misrepresentations, and/or omissions, Plaintiffs and Class Members have suffered damages in an amount equal to the amount that Defendants charged them.

64. Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause damages to Plaintiffs and Class Members.

## THIRD CAUSE OF ACTION
**(Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203)**
**(On Behalf of the Class)**

65. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully stated herein.

66. Defendants have engaged, and continue to engage, in unfair, unlawful, and deceptive trade practices in Florida by engaging in the unfair, unlawful, and deceptive business practices outlined in this Class Action Complaint. In particular, Defendants have knowingly and willfully engaged, and continue to engage in, unfair, unlawful, and deceptive trade practices by:

a. developing and marketing a product that contained nicotine levels far in excess of cigarettes with the intention of creating and fostering long-term addiction to JUUL products for minors to continue that addiction into adulthood;

b. falsely and deceptively marketing, advertising, and selling JUUL e-cigarettes and JUULpods by misrepresenting their nicotine content and nicotine pharmacokinetics, when in fact JUUL is likely to aggravate nicotine addiction;

c. falsely and deceptively marketing, advertising, and selling JUUL's "autoship" service for use in Florida as something consumers could cancel "anytime" without disclosing to consumers how addiction associated with use of JUUL e- cigarettes would interfere with their ability to cancel the JUULpod subscription;

d. creating advertising that lured minors into using JUUL e- cigarettes, and disseminating that advertising through unregulated social media platforms commonly used by most youth in the United States;

e. setting the price of JUULpods at an artificially low price that is intended to and does attract underage users to purchase JUUL products;

f. violating Section 877.112, Florida Statutes (2018), by selling, delivering, bartering, furnishing, and/or giving, directly or indirectly, nicotine dispensing devices (e.g., JUUL e-cigarettes) and nicotine products (e.g., JUULpods) to persons who, at the time of sale, were under 18 years of age;

g. violating Section 877.112(11), Florida Statutes (2018), by selling, permitting to be sold, offering for sale, and/or displaying for sale nicotine dispensing devices (e.g., JUUL e-cigarettes) and nicotine products (e.g., JUULpods) by means of self-service merchandising via Post Mates and other retailers who offer JUUL products for direct retail consumer access and handling before purchase without the intervention or assistance of the retailer or the retailer's owner, employee, or agent by offering delivery without any form of proof of age;

h. violating Section 877.112(12), Florida Statutes (2018), by selling and/or delivering nicotine dispensing devices (e.g., JUUL e-cigarettes) and nicotine products (e.g., JUULpods); and

i. violating other legal standards set forth above.

67. Plaintiffs and Class Members relied to their detriment on Defendants' unfair, unlawful, and deceptive business practices. Had Plaintiffs and Class Members been adequately informed rather than intentionally deceived by Defendants, they would have acted differently by,

without limitation: (1) not purchasing a JUUL E-cigarette or JUULpod; and (2) not subscribing to Defendants' "autoship" service.

68. Defendants engaged, and continue to engage, in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited under FDUTPA.

69. Plaintiffs and Class Members are entitled to full restitution of monies to restore all amounts paid to and acquired by Defendants from Plaintiffs and Class Members by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

70. Plaintiffs seek, on behalf of themselves and Class Members, an injunction to prohibit Defendants from continuing to engage in the unfair and deceptive advertising and marketing practices complained of herein in Florida.

71. Further Plaintiffs and Class Members seek: (1) a declaration that the above-described conduct constitutes unfair and deceptive trade practices; and (2) injunctive relief restraining Defendants from engaging in any such unfair and deceptive practices in the future in Florida. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public of Florida and the loss of money and property in that the Defendants will continue to violate the laws of Florida, unless specifically ordered to comply with the same. This expectation of future violations will require current and future minor consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs and Class Members have no other adequate remedy at law to ensure future compliance with the FDUTPA alleged to have been violated herein.

72. As a direct and proximate result of such actions, Plaintiffs and Class Members

have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such unfair and deceptive trade practices.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**(On Behalf of the Class)**

73. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully stated herein.

74. By means of Defendants' wrongful conduct alleged herein, Defendants knowingly sold JUUL e-cigarettes and JUULpods to Plaintiffs and Class Members in a manner that was unfair, unconscionable, and oppressive. Specifically, Defendants engaged in advertising campaigns and other unfair, unconscionable, and oppressive acts that resulted in the sale and collection of monies from minors, which Defendants intended to occur.

75. Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and Class Members. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and Class Members.

76. As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

77. Defendants' unjust enrichment resulted from the conduct alleged herein. Specifically, Defendants knowingly marketed, sold to, and profited from minors' purchases of JUUL nicotine dispensing devices and nicotine products.

78. It is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from selling JUUL nicotine dispensing devices and nicotine products to Plaintiffs Class Members in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under such circumstances makes it inequitable, and constitutes unjust

enrichment.

79. The financial benefits Defendants derived rightfully belong to Plaintiffs and Class Members. Defendants should be compelled to return in a common fund for the benefit of Plaintiffs and Class Members all wrongful or inequitable proceeds received by them from the sale of JUUL nicotine dispensing devices and nicotine products to minors.

80. Plaintiffs and members of the Classes have no adequate remedy at law.

**FIFTH CAUSE OF ACTION**
**(Strict Product Liability – Failure to Warn)**
**(On Behalf of the Class and Guardian Class)**

81. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully stated herein.

82. Defendants manufactured, distributed and sold JUUL nicotine dispensing devices and nicotine products.

83. Defendants were aware that the JUUL nicotine dispensing devices and nicotine products had potential risks that were known and knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, distribution, and sale of JUUL nicotine dispensing devices and nicotine products.

84. The use of JUUL nicotine dispensing devices and nicotine products presented a substantial danger of causing nicotine addiction when minors used a JUUL nicotine dispensing devices or nicotine products in an intended or reasonably foreseeable way.

85. Plaintiffs and Class Members could not recognize the potential risks of using a JUUL nicotine dispensing devices and nicotine products because Defendants intentionally downplayed, misrepresented, and/or failed to warn of the risks of nicotine content and addiction that the JUUL nicotine dispensing devices and nicotine products posed.

86. Defendants failed to adequately warn or instruct foreseeable users of JUUL nicotine dispensing devices and nicotine products of the risks of nicotine addiction that their JUUL nicotine dispensing devices and nicotine products posed.

87. Plaintiffs and Class Members were harmed by Defendants' failure to warn.

88. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure have suffered increased risk of illness, disease or disease process, requiring an award of the cost of a program for monitoring for detection of such illness, disease process or disease. Early detection of illness, disease or disease process will benefit Plaintiffs and Class Members.

89. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure to an addictive substance have suffered the need for tobacco education and cessation counseling, requiring an award of the cost of a program for education and cessation.

90. Defendants' lack of sufficient instructions or warnings was a substantial factor in causing harm to Plaintiffs and Class Members.

91. In addition, Plaintiff Zampa and the Guardian Class members seek the cost of diagnostic testing for the early detection of illness, disease, and disease process, the cost of nicotine use cessation programs, and other remedies.

## SIXTH CAUSE OF ACTION

**(Negligence)**

**(On Behalf of the Class and Guardian Class)**

92. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained

in paragraphs 1 through 41 as though fully stated herein.

93. Upon marketing and offering for sale the JUUL products, Defendants had a duty and owed a duty to Plaintiffs and Class members to exercise a degree of care a reasonable e-cigarette manufacturer would exercise under like circumstances to ensure its products were not sold to and/or used by minor Florida residents, including Plaintiffs and Class members.

94. Defendants knew that minor Florida residents, including Plaintiffs and Class members, would be prone to purchase and/or try JUUL products.

95. Defendants breached their duty to minor Florida residents, including Plaintiffs and Class members, by permitting their products to be sold to minor Florida residents, including Plaintiffs and Class members, through their website and other online retailers such as PostMates and others, wherein identification and proof of age was not required for purchase and acquisition of the JUUL products.

96. Defendants breached their duty to minor Florida residents, including Plaintiffs and Class members, by failing to adequately warn of the health hazards, particularly to minors, of using the JUUL products, including the highly addictive nature and levels of the nicotine its products delivered.

97. But for Defendants' duties and breaches thereof, Plaintiffs and Class members (i.e., minor Florida residents) have been harmed.

98. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure have suffered increased risk of illness, disease or disease process, requiring an award of the cost of a program for monitoring for detection of such illness, disease process or disease. Early detection of illness, disease or disease process will

benefit Plaintiffs and Class Members.

99. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure to an addictive substance have suffered the need for tobacco education and cessation counseling, requiring an award of the cost of a program for education and cessation.

100. Defendants' lack of sufficient instructions or warnings was a substantial factor in causing harm to Plaintiffs and Class Members.

101. In addition, Plaintiff Zampa and the Guardian Class members seek the cost of diagnostic testing for the early detection of illness, disease, and disease process, the cost of nicotine use cessation programs, and other remedies.

## SEVENTH CAUSE OF ACTION
**(Negligence *Per Se*)**
**(On Behalf of the Class and Guardian Class)**

102. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully stated herein.

103. The Florida Legislature enacted Section 877.112(2), Florida Statutes, to prevent the "unlawful to s[ale], deliver[y], barter[ing], furnish[ing], or giv[ing], directly or indirectly, to any person who is under 18 years of age [of] any nicotine product or a nicotine dispensing device."

104. The Florida Legislature enacted Section 877.112, Florida Statutes, to protect the public, and specifically minor Florida residents, from a public safety issue—namely, ingestion of tobacco products by persons under the age of 18.

105. Plaintiffs and Class members are the class of individuals the Florida Legislature

sought to protect through enactment of Section 877.122, Florida Statutes.

106. Plaintiffs' and Class members' injuries and damages are the injuries and damages the Florida Legislature sought to protect through enactment of Section 877.112, Florida Statutes.

107. Defendants' behavior as alleged above and herein violated Section 877.112, Florida Statutes.

108. Defendants' violation of Section 877.112, Florida Statutes, caused the injuries and damages to Plaintiffs and Class members.

109. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure have suffered increased risk of illness, disease or disease process, requiring an award of the cost of a program for monitoring for detection of such illness, disease process or disease. Early detection of illness, disease or disease process will benefit Plaintiffs and Class Members.

110. As a result of Defendants' conduct, minor Plaintiffs and Class Members have been significantly exposed to toxic substances, including nicotine and nicotine delivery additives, and have as a result of this exposure to an addictive substance have suffered the need for tobacco education and cessation counseling, requiring an award of the cost of a program for education and cessation.

111. Defendants' lack of sufficient instructions or warnings was a substantial factor in causing harm to Plaintiffs and Class Members.

112. In addition, Plaintiff Zampa and the Guardian Class members seek the cost of diagnostic testing for the early detection of illness, disease, and disease process, the cost of nicotine use cessation programs, and other remedies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class and Guardian Class Members, respectfully request that this Court enter an Order:

a. Certifying the Florida Class, and appointing Plaintiffs as Class Representatives;

b. Finding that Defendants' conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

c. Enjoining Defendants from engaging in further negligent, deceptive, unfair, and unlawful advertising as alleged herein;

d. Enjoining Defendants from engaging in further negligent, deceptive, unfair, and unlawful business practices as alleged herein;

e. Awarding Plaintiffs and Class Members actual, compensatory, and consequential damages;

f. Awarding Plaintiffs and Class Members statutory damages and penalties, as allowed by law;

g. Awarding Plaintiffs and Class Members restitution;

h. A monetary award of the cost of a program for diagnostic testing for the early detection of illness, disease, or disease process for class members who used JUUL products underage users of the health effects and addictive nature of the JUUL products, or in the alternative injunctive relief for the creation of a fund to do the same;

i. An monetary award of the cost of a nicotine use cessation program for class members who used JUUL products underage users of the health effects and addictive nature of the JUUL products, or in the alternative injunctive relief for

the creation of a fund to do the same;

j. A monetary award of the cost of a public information campaign to warn underage users of the health effects and addictive nature of the JUUL products, or in the alternative injunctive relief for the creation of a fund to do the same.

k. Awarding Plaintiffs and Class Members pre-judgment and post-judgment interest;

l. Awarding Plaintiffs and Class Members reasonable attorneys' fees, costs, and expenses; and

m. Granting such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated:November 5, 2018 By:

*/s/ John A. Yanchunis*
John A. Yanchunis
Ryan J. McGee
Jean S. Martin
(*Pro Hac Vice to be submitted*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813/223-5505
813/223-5402 (fax)
*jyanchunis@ForThePeople.com*
*rmcgee@ForThePeople.com*
*jeanmartin@ForThePeople.com*

**THE HANNON LAW FIRM, LLC**
Kevin S. Hannon (*pro hac vice to be submitted*)
1641 Downing Street
Denver, CO 80218
Tel: 303-861-8800
Email: khannon@hannonlaw.com